# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### SOUTHERN DIVISION

| | |
|---|---|
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **vs.** ) | **Case No. CR-06-S-417-S** |
| ) | |
| **MARC EVAN GREENBERG;** ) | |
| **JEFFREY ROBERT LIBMAN;** ) | |
| **and WEBE WEB CORPORATION** ) | |

## MEMORANDUM OPINION

This matter reaches the court following the decision of a United States Magistrate Judge sitting in the Southern District of Florida, who granted the government's motion to detain defendants Marc Evan Greenberg and Jeffrey Robert Libman, prior to trial and until the conclusion thereof.[1]  Now appearing before this court, defendants have filed motions to revoke the pretrial detention order.[2]  Having reviewed the transcript from the prior proceedings, taken additional evidence, and heard arguments of counsel, the court finds that the motions to revoke are due to be granted, subject to those conditions specified in the separate orders to be entered contemporaneously with this opinion.  Below, the court enters written findings of fact

---

[1] Case No. CR-06-MJ-6418-BSS (S.D. Fla.), doc. no. 7 (Detention Order). ***Nota bene:*** to save space, the court will in future citations simply refer to this document as "Detention Order," and provide a page citation where necessary.

[2] Case No. CR-06-S-417-S (N.D. Ala.), doc. no. 23 (Defendant Greenberg's Motion to Revoke Detention Order); doc. no. 30 (Defendant Libman's Motion to Revoke Detention Order). ***Nota bene:*** to save space, the court will in future citations refer to documents from this docket sheet by their document number only.

and statements of reasons for ordering pretrial release, in accordance with the provisions of 18 U.S.C. § 3142(h).

## I. INTRODUCTION

On December 1, 2006, Magistrate Judge Barry S. Seltzer of the United States District Court for the Southern District of Florida held a hearing to determine whether pretrial detention was appropriate for defendants Greenberg and Libman. *See* 18 U.S.C. § 3142(f) (requiring such a hearing). At that hearing, as here, the government had the burden of persuading the court either: (1) by a preponderance of the evidence, that defendants pose a risk of flight; and/or (2) by clear and convincing evidence, that defendants pose a danger to the community. *E.g.*, *United States v. King*, 849 F.2d 485, 489 (11th Cir. 1988).

Based upon the grand jury indictment, Magistrate Seltzer found probable cause to believe that defendants committed offenses involving minor victims under 18 U.S.C. §§ 2251(a),(e) and 2252(a)(1).[3] *See United States v. Hurtado*, 779 F.2d 1467, 1479 (11th Cir. 1985) (holding that "an indictment is sufficient to demonstrate probable cause" for purposes of 18 U.S.C. § 3142(e)). That finding — with which this court concurs — gives rise to a rebuttable presumption "that no condition or combination of conditions [of release] will reasonably assure the appearance of the

---

[3] Detention Order, p. 2.

defendant as required and the safety of the community." 18 U.S.C. § 3142(e) (listing offenses involving a minor victim under 18 U.S.C. §§ 2251 and 2252(a)(1)).

With that foundation in place, Magistrate Seltzer then proceeded to perform the same analysis that this court must now repeat. That is, he attempted to ascertain whether either defendant had proffered evidence sufficient to rebut the presumption that no conditions could prevent flight or assure community safety, ever mindful of the fact that, regardless of defendant's proof, the presumption "remains in the case as an evidentiary finding militating against release, to be weigh[ed] along with other evidence." *United States v. Quartermaine*, 913 F.2d 910, 916 (11th Cir. 1990). *See also King*, 849 F.2d at 488 (holding that the statutory presumption imposes only a burden of production upon the defendant). After hearing the evidence and considering the arguments, Magistrate Seltzer concluded that the presumption remained unrebutted with respect to the safety of the community, and ordered pretrial detention on that ground alone.[4]

This court conducted a hearing concerning pretrial detention on January 5, 2007. In the following sections of this opinion, the court considers the arguments and

---

[4] Detention Order, p. 7. Curiously, as a result of an apparent miscommunication, the government failed to argue to Magistrate Seltzer that the circumstances of this case render it likely that defendants will attempt to flee. *See id.* Now before this court, however, the government has made clear that it believes defendants are flight risks, and asserts that detention is necessary to counteract that distinct possibility.

evidence for and against pretrial detention *de novo*, *see King*, 849 F.2d at 490, taking into account the factors enumerated in 18 U.S.C. § 3142(g).[5]

## II.  FINDINGS OF FACT

1.  Defendants stand before the court charged by an indictment, returned by a grant jury in this District, with one count of conspiring to use minors to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct, in violation of 18 U.S.C. §§ 2251(a) and (e); and seventy-eight counts of transporting and shipping in interstate commerce visual depictions of a minor under

---

[5] Section 3142(g) requires the court to consider the following information in deciding whether there are conditions of release that will reasonably assure community safety and prevent flight:

(1) the nature and circumstances of the offense charged, including whether the offense . . . involves a minor victim . . . ;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including —

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

the age of eighteen engaging in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(1).[6] As felony offenses that have been codified within Chapter 110 of Title 18, United States Code, they are defined by statute as "crime[s] of violence." *See* 18 U.S.C. §§ 3156(a)(4)(c), 3142(g)(1).

2.   The court has reviewed the indictment in this case, as well as the transcript from the detention hearing before Magistrate Seltzer and the visual images forming the foundation for Counts Two through Seventy-Eight of the indictment. Those documents provide credible evidence that defendants committed the offenses with which they have been charged. *See* 18 U.S.C. § 3142(g)(2).

3.   Marc Greenberg was the President and Jeffrey Libman was the Vice President of a business entity known as "Webe Web Corporation."[7] According to the government, Libman was responsible for the computer/internet side of the operation, and he was directly involved in the actual production of the child images.[8] Greenberg was primarily responsible for the business aspects of the operation.[9] Through the corporation, Greenberg and Libman operated and maintained what they purported to

---

[6] *See generally* doc. no. 1 (Indictment). "Sexually explicit conduct" is defined to include the "lascivious exhibition of the genitals or public area of any person." 18 U.S.C. § 2256(2)(A)(v).

[7] *See, e.g.*, doc. no. 1, ¶¶ 1, 2.

[8] *Id.* at ¶ 9.

[9] *Id.*

be "child modeling" websites.[10]  Most of the websites featured one child, ranging in age from seven years to approximately sixteen years.[11]

    4.    Individual websites showed either a picture or collage of pictures of the featured child.[12]  A viewer was able to click on "enter" and be directed to galleries of preview pictures of the child in various clothing outfits.[13]  The viewer was given the option to subscribe to the child's website for an initial monthly fee of $25.00, followed by subsequent monthly fees of $20.00.[14]  Subscribers could view approximately one-hundred pictures of the child in the same outfit as the preview picture.[15]  New galleries would be added every ten days to two weeks.[16]

    5.    Although the government concedes that the children depicted in the photographs that are the subject of the indictment are "clothed," the court has viewed the images and believes it would be more appropriate to describe the subjects as "scantily clad."  Moreover, the United States Postal Service Inspector who investigated this case testified before Magistrate Seltzer as to the offending

---

[10] *Id.* at ¶ 4.
[11] *Id.*
[12] *Id.* at ¶ 6.
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] *Id.*

characteristics that render the photographs unlawful "lascivious exhibitions."[17]

Without stating which characteristics can be attributed to specific photographs, the Postal Inspector identified the following collection of features that render the images lascivious:

- *Focal point* – genital or public area;

- *Setting* – sexually suggestive, such as a bedroom or on a bed;

---

[17] Although it is apparently an unsettled question, the Third Circuit has held that, to be deemed a "lascivious exhibition," the law does not require nudity or discernibility of the genitals or pubic area. *United States v. Knox*, 32 F.3d 733, 746 (3d Cir. 1994). *See also United States v. Williams*, 444 F.3d 1286, 1299 n. 63 (11th Cir. 2006) (noting with curiosity the conclusions of the *Knox* court). In any case, courts have looked to the following factors in determining whether a depiction is "lascivious," mindful that a given image need not involve all the factors and that it must be judged by its overall content:

> 1) whether the focal point of the visual depiction is on the child's genitalia or pubic area;
>
> 2) whether the setting of the visual depiction is sexually suggestive — *i.e.*, in a place or pose generally associated with sexual activity;
>
> 3) whether the child is depicted in an unnatural pose, or in inappropriate attire, considering the age of the child;
>
> 4) whether the child is fully of partially clothed, or nude;
>
> 5) whether the visual depiction suggests sexual coyness or a willingness to engage in sexual activity;
>
> 6) whether the visual depiction is intended or designed to elicit a sexual response in the viewer.

*United States v. Villard*, 885 F.2d 117, 122 (3d Cir. 1989) (citing *United States v. Dost*, 636 F. Supp. 828, 832 (S.D. Cal. 1986)); *see also Williams*, 444 F.3d at 1299 n. 62 (noting that "[v]irtually all lower courts that have addressed the meaning of 'lascivious exhibition' have embraced the widely followed 'Dost' test").

- *Pose* – unnatural, such as with legs spread, legs up in the air, hands positioned to draw attention to genital area, or bodies bent over to expose the back side or genital area to the camera;

- *Facial expressions* – coyness or suggesting interest in sexual activity, such as mouth opened wide;

- *Attire* – age-inappropriate, such as high heel shoes, thongs (some of which are almost transparent), tight-fitting and small-sized clothing revealing the outline of the pubic area; and

- *Intended viewer response* – Libman reportedly told one photographer, the more provocative the photograph, the more profitable.[18]

6.  Greenberg, Libman, and Webe Web Corporation also created, owned, and controlled "Babble Club," an advertising tool and fan club for those persons interested in the children depicted in the website images.[19] Membership in the Babble Club was free, and members received "free sample" images of the children to encourage the purchase of subscriptions to individual child websites.[20] The Babble Club also hosted discussion boards or groups, with separate groups devoted to each

---

[18] *See generally*, *e.g.*, Case No. CR-06-MJ-6418-BSS (S.D. Fla.), Initial Detention Hearing Transcript, pp. 8-9, 53-59.

[19] Doc. no. 1, ¶ 10.

[20] *Id.*

child.[21]  Members commented on images of children they liked and on the type of clothing and poses they would like to see for each child.[22]  Members also wrote poetry to the child and expressed feelings of fondness and devotion to the child.[23]  According to the Postal Inspector, the authors of these expressions were usually adult men (not affiliated with the modeling industry), and the content of their expressions were often romantic.[24]  Indeed, the removal of a child's photographs from the website would often generate an outcry from the adult men.[25]

  7.  Although the indictment encompasses the time period of December 2002 through April 2005, Greenberg and Libman actually operated their websites, and continued to collect income therefrom, up to their arrest on November 28, 2006.[26]  The quantity of income generated from the enterprise was substantial.  Investigation has revealed that Greenberg, who has no legitimate source of income, has known bank and benefit accounts containing at least $354,165.49; Libman, who also has no legitimate source of income, has known bank and benefit accounts containing at least $262,982.31; and the corporation has known accounts containing about

---

[21] *Id*. at ¶ 11.
[22] *Id*.
[23] *Id*.
[24] Case No. CR-06-MJ-6418-BSS (S.D. Fla.), Initial Detention Hearing Transcript, p. 59.
[25] *Id*.
[26] Government's Ex. 1 at Second Detention Hearing (Government's Proffer), ¶ 7.

$530,000.00.[27] This sum — $1,147,147.80 — does not necessarily represent the totality of the gains. Greenberg, for example, also owns a condominium (which has been seized), and he reportedly boasted to a neighbor about having his "big money" tied up offshore.[28]

8. During the execution of a search warrant at Libman's residence, agents discovered photographic backdrops, one of which was in the bedroom.[29] These photographic backdrops reportedly match the backdrops of various child internet images.[30]

9. Finally, the government has pointed out that Greenberg and Libman each face substantial prison sentences if convicted of the instant offenses. Each faces a mandatory minimum sentence of fifteen years' imprisonment and a maximum sentence of thirty years' imprisonment as to Count One of the indictment (conspiracy to use minors to engage in sexually explicit conduct for the purpose of producing visual depictions of such conduct).[31] Each also faces a mandatory minimum sentence of five years' imprisonment and a maximum of twenty years' imprisonment as to each of the remaining seventy-seven counts of the indictment (charging transporting and

---

[27] *Id.* at ¶ 8.
[28] *Id.*
[29] *Id.* at ¶ 9.
[30] *Id.*
[31] *Id.* at ¶ 13.

shipping in interstate commerce visual depictions of a minor under the age of eighteen engaging in sexually explicit conduct).[32] The government further proffered that the Federal Sentencing Guidelines provide for various increases or enhancements based upon the existence of aggravating factors, including: the age of the child victims; the number of victims; the production of materials; and the distribution of materials.[33] Were the government to prevail on all of these potential enhancements, the sentencing range recommended by the advisory Guidelines may very well be higher than the statutory maximum sentence for each of the counts of the indictment.[34]

10.     The pertinent personal history and characteristics of the defendants are significant to this court's assessment of their candidacy for bond.  *See* 18 U.S.C. §§ 3142(g)(3)(A) and (B).  Greenberg and Libman were born in Ohio and New York, respectively, and therefore are United States citizens.[35]  Greenberg has lived in South Florida for thirty-three years, and currently resides with his girlfriend in Broward County.[36]  Libman is single and has no children, but has resided in South Florida for

---

[32] *Id*.

[33] *Id*. at ¶ 14.

[34] *Id*.

[35] Greenberg Pretrial Services Report, p. 1; Libman Pretrial Services Report, p. 1.

[36] *Id*.; Second Detention Hearing Transcript, pp. 16-19, 54.

thirty-one years.[37] Multiple members of both defendants' families reside in the South Florida area,[38] and many of them appeared at the detention hearings to show their support and offer testimony.[39] Indeed, members of both defendants' families, as well as some friends, were willing to co-sign on a bond to help ensure their appearance at trial.[40] Greenberg reported that he does not possess a passport and has never traveled outside the United States,[41] while Libman's passport apparently has expired and he has not traveled outside the United States in at least ten, and possibly as many as twenty, years.[42] The Pretrial Services Report shows that an automated check of law enforcement data bases reflected no criminal history for either Greenberg or Libman.[43]

11. According to the Pretrial Services Reports, Greenberg has been employed by the Webe Web Corporation for the past ten years.[44] Libman's Report does not list an employer, but it does reveal that he previously held a position as a

---

[37] *E.g.*, *id*. at pp. 26-27, 54.

[38] *Id*. at pp. 16-19, 26-27.

[39] *E.g.*, *id*. at pp. 14, 23, 32; Initial Detention Hearing Transcript, pp 79-80.

[40] Second Detention Hearing Transcript, pp. 23, 60-62; Initial Detention Hearing Transcript, pp. 71-72, 79-81.

[41] *E.g.*, Initial Detention Hearing Transcript, p. 78.

[42] Second Detention Hearing Transcript, pp. 30, 33.

[43] Greenberg Pretrial Services Report, p. 3; Libman Pretrial Services Report, p. 2.

[44] Greenberg Pretrial Services Report, p. 1.

musician.[45]   Greenberg reported a monthly income of $10,000, but the Pretrial Services Report estimates his net worth at more than $1,272,000.[46]   Libman has known bank accounts containing approximately $263,000.[47]

    12.    The court reviewed and received evidence concerning the nature and seriousness of the danger to the community that would be posed by the release of the defendants.  *See* 18 U.S.C. § 3142(g)(4).  Greenberg was the President, and Libman was the Vice President, of the company that was responsible for the distribution of large numbers of images of children engaged in the apparent "lascivious exhibition of the genitals or pubic area," which Congress has defined as "sexually explicit conduct."[48]   18 U.S.C. § 2256(2)(A)(v).  Greenberg and Libman distributed these photographs over a period of several years and garnered substantial wealth from their activities.   Indeed, as mentioned above, Libman allegedly told one of the photographers that the more provocative the photograph, the more profitable it would be.  Both Greenberg and Libman ran a website that functioned as a fan-club forum, in which adult men would post romantic expressions of their fondness for the child

---

[45] Libman Pretrial Services Report, p. 2.
[46] Greenberg Pretrial Services Report, p. 2.
[47] Government's Proffer, ¶ 8.
[48] Doc. no. 1, ¶¶ 1, 2.

models.[49]  Finally, as previously noted, photographic backdrops and outfits similar to those appearing in photographs were found in Libman's residence.[50]

13.    Magistrate Seltzer based his order of detention upon the finding that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.  *See* 18 U.S.C. § 3142(e).  The court respectfully disagrees with this conclusion.  Both defendants have proposed living with their respective parent (or parents) in their South Florida homes pending trial.[51] Keeping in mind that the defendants are not accused of child *molestation* or other *physical contact* with children, one principal risk associated with pretrial release is, nonetheless, the government's concern that defendants might continue to associate with children.  In other words, the fear is that, left alone, defendants could locate new victims.  Neither Greenberg's nor Libman's parents have children residing in their homes.  Libman's father testified, however, that his house is located approximately three-hundred feet from houses where neighborhood children live.[52]  Additionally, there is a fear that, given internet access, the defendants could continue to operate their business, committing further violations of the law.  Both households currently

---

[49] Initial Detention Hearing Transcript, p. 59.

[50] Second Detention Hearing Transcript, pp. 9-13; Government's Proffer, ¶ 9.

[51] Second Detention Hearing Transcript, pp. 18, 27.

[52] *Id*. at p. 31.  As for day care centers and schools, however, the parents of both Greenberg and Libman testified that they are at least several miles removed.  *Id*. at pp. 20, 31-32.

have internet access. On the record, however, family members of both defendants have assured that they could personally supervise the defendants' activities at all times,[53] keeping them away from children,[54] and also preventing any access to the internet.[55] Their assurances, combined with a *substantial* bond, home detention without internet access, home monitoring, and daily reports to Pretrial Services, appear to this court to be sufficient bulwarks against a continuing threat to public safety. The court therefore declines to find that there exists no condition or combination of conditions of release that will reasonably assure the safety of any other person and the community. *See* 18 U.S.C. § 3142(e).

14. Although the government did not argue before Magistrate Seltzer that there exists no condition or combination of conditions of release that will reasonably assure the defendants' *appearances* at trial, *see* 18 U.S.C. § 3142(e), that is precisely the argument that has been made to this court.[56] The court agrees that there is significant motivation for flight. As outlined above, both defendants face lengthy

---

[53] *Id*. at pp. 21-22, 33.

[54] *Id*. at pp. 20-21, 28.

[55] *Id*. at pp. 17-18; 27-29. Greenberg's brother, who also lives with his father, actually runs an online T-shirt business out of his father's home, but the father agreed on the record to temporarily disconnect the internet access if this court called for that action as a condition of release. *Id*. at pp. 17-18.

[56] *Id*. at p. 3.

prison sentences if convicted.[57] Both live in an area of the country that is renowned as an international travel portal, and at least one (Greenberg) is believed to have off-shore bank accounts.[58] On the other hand, neither currently has a valid passport,[59] and counsel for defendants indicated that their clients would submit to the attachment of Global Positioning Satellite ("GPS") ankle monitors or other equivalent devices,[60] plus bear the expense of telephone caller identification systems that would enable Pretrial Services to confirm the caller's location.[61] The court has received counsels' invitation to require a considerable bond as well.[62] In light of all this, the court believes that specially tailored conditions of release will insure against the risk of flight. Therefore, the court declines to find that there exists no condition or combination of conditions of release that will reasonably assure the defendants' appearances as required by the court. *See* 18 U.S.C. § 3142(e).

### III. CONCLUSIONS

1.      Based upon the above findings of fact, this court concludes that pretrial release of the defendants on bond under conditions prescribed by this court will not

---

[57] Government's Proffer, ¶ 14.

[58] *Id*. at ¶ 12.

[59] Initial Detention Hearing Transcript, p. 78; Second Detention Hearing Transcript, p. 33.

[60] Second Detention Hearing Transcript, pp. 60, 61.

[61] *Id*. at p. 62.

[62] *Id*. at pp. 60, 61.

present an unreasonable risk of flight. The court is not unsympathetic to the government's concerns, but cannot overlook the fact that there are multiple conditions of release that will serve to neutralize the risk. Requiring a large bond will tie up assets; requiring confinement in the parents' homes will ensure constant supervision; disconnection of internet access will preclude further exposure of illegal child pornography; home monitoring will provide the government with twenty-four hour knowledge of defendants' whereabouts; and daily reports to Pretrial Services officers will confirm defendants' compliance with the court's orders. These conditions are not exhaustive. They will be listed in precise detail in the two orders that accompany this opinion.

2.  Based upon the above findings of fact, this court concludes that the release of the defendants on bond prior to trial will not present an unreasonable danger to persons and to the community. Again, there are specific counter-measures that will sufficiently protect the community. Even so, this court notes that it is not presently persuaded by the defense argument that the visual depictions at issue here, in which the children are photographed "clothed," poses less of a danger than the visual depictions in which children are photographed nude, or engaging in sexual activity. Whether it is constitutional to proscribe photography of "clothed" children is an issue of substantive law that may or may not need to be addressed later in this

case. The fact that the children in the photographs forming the basis of this indictment are wearing some form of clothing, however, does not mean that the alleged perpetrators are somehow less threatening to children than those who insist that their victims be naked. The court's rationale in permitting pretrial release is simply that there are practicable means by which the government can keep track of defendants and simultaneously prevent further harm without the necessity of pretrial imprisonment. Our constitutional norms are decidedly against unnecessary restraint of liberty, and the Bail Reform Act reflects that stance, expressly preserving the constitutional presumption of innocence. *See* 18 U.S.C. § 3142(j).

Separate orders specifying the conditions for releasing each defendant pending trial shall be entered contemporaneously herewith.

DONE this 9th day of January, 2007.

_____
United States District Judge